IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

BRODERICK K. RAINEY

   Plaintiff,

v.

ALMATIS BURNSIDE, LLC

   Defendant.

CIVIL NO. 3:18-CV-00222

## COMPLAINT

Plaintiff Broderick K. Rainey asserts his causes of action against defendant Almatis Burnside, LLC as follows:

### THE PARTIES

1. Plaintiff is Broderick K. Rainey, a person of age and majority, and a Louisiana citizen residing in Gramercy, Louisiana

2. Defendant is Almatis Burnside, LLC (hereinafter Almatis), a foreign limited liability company organized in Delaware, and upon information and belief headquartered in Baton Rouge and actively doing business in Burnside, Louisiana.

### JURISDICTION AND VENUE

3. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 12101 *et seq*. (the Americans with Disabilities Act as amended), and 42 U.S.C. §§ 2000e-2 *et seq*. (Title VII), as more particularly set-out herein.

4. The Court has personal jurisdiction over Almatis because it is a company headquartered in Louisiana, actively doing business in Louisiana, and, through its registered agent for the service of process, is present within Louisiana at the time this suit commenced.

5. Alternatively, the Court has personal jurisdiction over Almatis as it regularly transacts

business in Louisiana and regularly employs Louisiana citizens, committed a tortious act within Louisiana giving rise to the causes of action in this case, and derives substantial revenue from the services it provides in Louisiana.  Thus, Almatis has established minimum specific contacts with Louisiana, arising from the specific facts of this case, comporting with the requirements of fair play, substantial justice, and the Fourteenth Amendment of the Constitution of the United States.

6. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e–5(f)(3) (Title VII's venue provision) and 42 U.S.C. § 12117 (incorporating Title VII's venue provision in ADA cases) because (1) the unlawful employment practice alleged herein was committed in Louisiana, (2) upon information and belief the employment records relevant to this action are found in this judicial district (specifically, Ascension Parish), and (3) but for the unlawful employment practice, Mr. Rainey would have been employed in this district (specifically, Ascension Parish).

## PROCEDURAL AND STATUTORY REQUIREMENTS

7. At all relevant times, upon information and belief, Almatis employed more than 500 full-time employees.

8. On or about November 9, 2015, Almatis hired Mr. Rainey as an Operator 1 at its Burnside, Louisiana refinery.

9. On or about February 11, 2016, Almatis terminated Mr. Rainey's employment.

10. On February 12, 2016, Mr. Rainey timely filed his Charge of Discrimination with the New Orleans Field Office of the EEOC alleging that his termination was motivated by, and he had suffered from, unlawful discrimination based on his race (black) and disability, and was further retaliated against because of a previously filed Charge of Discrimination against Almatis.

11. The EEOC issued its Notice of Right to Sue letter to Mr. Rainey on December 20, 2017.

12. Mr. Rainey timely filed this complaint within 90 days of receiving the EEOC's Notice of

Right to Sue letter.

## FACTS

**A.     The Plaintiff – Broderick Rainey**

13.    Broderick Rainey is a 29 year-old man who lives in Gramercy, Louisiana

14.    Mr. Rainey is a lifelong Louisianan and graduated from Southeastern University in 2013 with his degree in business management and administration.

**B.     Mr. Rainey Suffers from a Form of Autoimmune Disorder That Affects His Kidneys**

15.    Around January 2015, Mr. Rainey was diagnosed with chronic kidney disease related to IgM Nephropathy, which is an autoimmune disorder that causes kidney damage and related sequelae.

16.    Currently and at all relevant times to this lawsuit, Mr. Rainey treats and did treat his nephropathy through a combination of medication and regular doctor's visits for blood work and general monitoring.

17.    Currently and at all relevant times to this lawsuit, Mr. Rainey's chronic kidney disease and nephropathy do not and did not limit his ability to work in any particular occupation in any way.

18.    Currently and at all relevant times to this lawsuit, Mr. Rainey does not and did not require any special medical assistance to take his kidney medication.

19.    When properly controlled through medication, neither Mr. Rainey's kidney disorder nor his medications prevent him from performing traditional job functions in any job environment, including industrial and refinery work.

20.    Currently and at all relevant times to this lawsuit, Mr. Rainey is medically cleared and was medically cleared by his physicians to work in his given job assignment with no restrictions

whatsoever.

21.     Currently and at all relevant times to this lawsuit, nothing about Mr. Rainey's kidney disorder or medications are or were capable of interacting with an industrial occupational environment to create a risk or direct threat of harm to either Mr. Rainey or his co-workers.

22.     Currently and at all relevant times to this lawsuit, Mr. Rainey was capable of performing his given job duties without accommodation, save for an accommodation consisting of periodic permission to attend medical appointments when those appointments could not be scheduled outside of regular work hours.

**C.     The Defendant – Almatis Burnside, LLC**

23.     Almatis Burnside, LLC is a Delaware limited liability company headquartered in Baton Rouge, Louisiana with its principal place of business at its refinery in Burnside, Louisiana.

24.     Almatis is in the business of refining and producing aluminum oxide ("alumnia").

25.     Upon information and belief, Almatis is a single-member limited liability company and the wholly owned subsidiary of its parent company, Almatis, Inc.

**D.     Almatis Withdraws Its Offer to Employ Mr. Rainey After It Learns of His Disability, but Later Hires Him After Mr. Rainey Files a Charge of Discrimination**

26.     Previously, Mr. Rainey had applied for employment with Almatis.

27.     On September 10, 2015, Almatis, through its human resources office, offered Mr. Rainey employment as an Operator 1.

28.     As a condition of employment, Almatis required Mr. Rainey to submit to a post-offer physical with its company/contracted physician.

29.     After his physical, Almatis, through its human resources office, indicated that it detected abnormalities in Mr. Rainey's blood work, and required Mr. Rainey to submit permissions from his physicians clearing him for work in the Almatis refinery.

4

30. Mr. Rainey's physicians subsequently cleared him for work with no restrictions.

31. On September 21, 2015, Mr. Rainey submitted his medical clearance to Almatis.

32. Almatis, through its human resources office, then requested Mr. Rainey to submit his medications profile to the company.

33. On September 22, 2015, Mr. Rainey submitted his medications profile.

34. On September 23, 2015, Almatis, through its company nurse, withdrew its offer of employment.

35. Almatis's company nurse told Mr. Rainey his offer was withdrawn specifically because of the results of his blood work taken during his post-offer physical.

36. On September 24, 2015, Mr. Rainey filed a Charge of Discrimination against Almatis with the EEOC (Charge No. 461-2015-02049).

37. Subsequently, around November 2015, Almatis, through its human resources office, contacted Mr. Rainey and offered to hire him as an Operator 1 in exchange for dismissing his Charge of Discrimination.

38. Mr. Rainey agreed.

**E.     Almatis Hires Mr. Rainey and Then Begins Pretextually Disciplining Him**

39. Mr. Rainey began his employment with Almatis as an Operator 1 on or about November 9, 2015.

40. At all relevant times to this lawsuit, Mr. Rainey's supervisor with discipline authority over him was Joe Kernan (white).

41. At all relevant times to this lawsuit, Mr. Rainey's decision-maker with termination authority over him was Alvin Clay (white).

42. At the time Mr. Rainey was hired, he informed Almatis human resources employees that

5

he would generally be required to miss a short amount of work once per month to attend medical appointments related to his kidney disorder.

43. Almatis human resources employees agreed to the arrangement and indicated Mr. Rainey would not receive any discipline so long as he provided a doctor's note confirming the appointment.

44. On or about November 25, 2015, Mr. Rainey ended his shift approximately 30 minutes early to attend his first monthly medical appointment related to his kidney disorder.

45. Mr. Rainey informed Almatis human resources employees who excused the absence.

46. Nevertheless, when Mr. Rainey returned to his job assignment the next day, Mr. Kernan issued him written discipline for leaving work early.

47. Mr. Rainey objected and noted that human resources excused the absence.

48. Mr. Kernan indicated that this was irrelevant and issued Mr. Rainey discipline anyway.

49. On or about December 1, 2015, Mr. Rainey developed flu like symptoms after performing his job duties outside in the rain.

50. Mr. Rainey contacted Almatis human resources and indicated he was sick.

51. Human resources excused Mr. Rainey's absence from work.

52. When Mr. Rainey returned to work the next day, Mr. Kernan again issued him written discipline for missing work.

53. On or about December 8, 2015, Mr. Rainey suffered a workplace accident when he became dehydrated and experienced a brief bout of syncopation.

54. In response, Almatis human resources employees placed Mr. Rainey on leave while he obtained medical clearance to return to work.

55. Mr. Rainey subsequently obtained clearance from his physicians to return to work and

did so on December 22, 2105.

56. On December 31, 2015, Mr. Rainey was scheduled to attend his second monthly medical appointment related to his kidney disorder.

57. Almatis human resources employees excused the absence.

58. Again, inexplicably, Mr. Kernan reprimanded Mr. Rainey for his allegedly unexcused absence.

59. On January 6, 2015, Mr. Rainey fell ill and timely requested an excused absence from work.

60. Almatis human resources employees did excuse the absence.

61. Once again, when Mr. Rainey returned to work, Mr. Kernan issued his written discipline.

62. Finally, on Thursday, February 4, 2016, Mr. Kernan changed Mr. Rainey's work scheduled without alerting Mr. Rainey.

63. Mr. Kernan scheduled Mr. Rainey to work the next day, Friday, February 5.

64. Mr. Rainey did not report for work on February 5 because he had scheduled a medically required endoscopy for that day (which, at the time of scheduling, was his scheduled day off).

65. Mr. Rainey first learned that Mr. Kernan changed his schedule when Mr. Rainey reported to work as usual on Monday.

66. Mr. Rainey worked as normal until February 10, 2016.

67. On February 10, 2016, Mr. Rainey's decision-maker, Charles Clay, met with Mr. Rainey and terminated his employment.

68. Mr. Clay indicated that Mr. Rainey was terminated for absences and poor work performance.

69. Mr. Clay specifically indicated that Mr. Rainey was terminated for missing short periods

of work so that he could attend necessary medical appointments related to his kidney disorder along with sick leave.

70. However, Mr. Rainey never missed any time from work that was not excused by Almatis human resources employees except for November 5, 2016, which was the date that Mr. Rainey had scheduled his endoscopy specifically because it was his regularly scheduled day off.

71. Regarding poor work performance, Mr. Rainey had never received any written, formal, or informal discipline or coaching regarding his work performance.

72. In fact, Mr. Rainey was an excellent worker.

**F.     Almatis Treated Others Outside of Mr. Rainey's Protected Class Far More Favorably than Mr. Rainey**

73. Mr. Rainey's treatment during his short employment at Almatis was inexplicable save for status-based discrimination and retaliation.

74. Mr. Rainey was employed with Almatis from approximately November 11, 2015 through February 10, 2016.

75. At all relevant times, Mr. Rainey was classified as either an Operator 1 or Precipitation Helper.

76. During that same time period, Steven Hatfield was a white employee, who upon information and belief did not suffer from any disability, and who had never filed an EEOC charge of discrimination against Almatis.

77. During that same time period, Steven Hatfield was also classified as an Operator 1 or Precipitation Helper.

78. During that same time period, Steven Hatfield's supervisor with discipline authority over him was Joe Kernan and Mr. Hatfield's decision-maker with termination authority was Alvin Clay.

79. Steven Hatfield began working for Almatis on the same day as Mr. Rainey.

80. Mr. Hatfield and Mr. Rainey were comparators in all respects.

81. During the same time period, Mr. Hatfield was routinely absent from work for non-work related reasons, including attending various court obligations.

82. Upon information and belief, neither Almatis, nor Joe Kernan, nor any other Almatis employee ever issued Mr. Hatfield any written discipline for his tardiness or absences.

83. Upon information and belief, neither Almatis, nor Alvin Clay, nor any other Almatis employee ever terminated Mr. Hatfield because of his tardiness or absences.

84. Upon information and belief, other white, non-disabled workers who had never filed Charges of Discrimination against Almatis were also routinely tardy or absent from work without excuse.

85. Upon information and belief, neither Almatis, nor Joe Kernan, nor Alvin Clay, nor any other Almatis employee ever disciplined or terminated these other employees because of their tardiness or absences.

86. Upon information and belief, Almatis, through its employee and authorized agent Joe Kernan, routinely and pretextually disciplined Mr. Rainey because he had previously filed a Charge of Discrimination against Almatis with the EEOC.

87. Alternatively, upon information and belief, Almatis, through its employee and authorized agent Joe Kernan, routinely and pretextually disciplined Mr. Rainey because he is disabled.

88. Alternatively, upon information and belief, Almatis, through its employee and authorized agent Joe Kernan, routinely and pretextually disciplined Mr. Rainey because he required reasonable accommodation in the form of very short, periodic absences from work to attend medical appointments.

89. Alternatively, upon information and belief, Almatis, through its employee and authorized agent Joe Kernan, routinely and pretextually disciplined Mr. Rainey because he is black.

90. Upon information and belief, Almatis, through its employee and authorized agent Alvin Clay, pretextually terminated Mr. Rainey because he had previously filed a Charge of Discrimination against Almatis with the EEOC.

91. Alternatively, upon information and belief, Almatis, through its employee and authorized agent Alvin Clay, pretextually terminated Mr. Rainey because he is disabled.

92. Alternatively, upon information and belief, Almatis, through its employee and authorized agent Alvin Clay, pretextually terminated Mr. Rainey because he required reasonable accommodation in form of very short, periodic absences from work to attend medical appointments.

93. Alternatively, upon information and belief, Almatis, through its employee and authorized agent Alvin Clay, pretextually terminated Mr. Rainey because he is black.

94. Alternatively, upon information and belief, Almatis, through its authorized agents and decision-makers, unlawfully withdrew Mr. Rainey's offer of employment of September 10, 2015 solely because Mr. Rainey was disabled (yet able to perform his job duties with or without accommodation), or was regarded as disabled, and only re-hired Mr. Rainey on November 10, 2015 to avoid legal liability after Mr. Rainey filed a Charge of Discrimination against Almatis with the EEOC.

95. Then, Almatis, upon information and belief, through its authorized agents and decision-makers, specifically set out to pretextually terminate Mr. Rainey in retaliation against him for filing that EEOC charge of discrimination.

96. Almatis, upon information and belief, accomplished this retaliation by having its human

resources employees indicate to Mr. Rainey that his absences would be excused, but then directing its supervisors and decision-makers to issue Mr. Rainey discipline for those same absences.

97. After documenting several "absences," Almatis directed its decision-maker to terminate Mr. Rainey's employment, which Mr. Clay did.

98. Upon information and belief, Almatis knew that its conduct was illegal under federal law but persisted specifically to accomplish its unlawful purpose and avoid legal liability for its retaliatory conduct.

**G.     The Aftermath**

99. Despite his diligent efforts, Mr. Rainey remained unemployed for several months after his termination.

100. Mr. Rainey eventually found periodic work through a temp service earning significantly less than his wages at Almatis.

101. After his termination, Mr. Rainey lost his Almatis-sponsored health insurance, could not afford insurance, and was without medical insurance.

102. During this time Mr. Rainey was still afflicted with his kidney disorder and required ongoing medical treatment and medication.

103. Mr. Rainey was forced to pay out of pocket for his medical care when able, ask his providers for free treatment, or forgo care.

104. The entire ordeal was extraordinarily stressful and caused Mr. Rainey significant mental anguish.

105. Eventually Mr. Rainey found re-employment that provided employer-sponsored health insurance.

106.	At present, Mr. Rainey still earns less than his prior wages at Almatis.

107.	Because of his unlawful termination, Mr. Rainey is out a significant amount of lost back wages.

108.	Because of his unlawful termination, Mr. Rainey is likely out a significant amount of lost future wages.

109.	Because of his unlawful termination, Mr. Rainey suffered extreme mental anguish related to his treatment at work, loss of wages, and loss of medical insurance.

110.	Because of his unlawful termination, Mr. Rainey is out a significant amount of out-of-pocket expenses.

## CAUSES OF ACTION

A.	**Retaliation Under the Americans with Disabilities Act (as Amended)**

111.	Pursuant to the Americans with Disabilities Act (as amended), an employer may not discriminate against an employee because he has engaged in protected protest or previously filed a charge of disability discrimination against the employer.  42 U.S.C § 12203(a).  To make a prima facie case of retaliation under the ADA, an employee must show "(1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir.1999).  An employee sufficiently satisfies the causal connection between the protected act and the adverse action by showing retaliation within four months of the protected activity. *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (so noting).  Retaliation occurring five months or longer after the protected activity establishes a causal connection when combined with other evidence of retaliation.  *Id.*  Otherwise, an employee's ADA retaliation claim is analyzed the same as a Title VII retaliation claim.  *Id.*

(analyzing plaintiff's retaliation claims under the ADA and Title VII simultaneously). An employer who retaliates against an employee in violation of the ADA owes the same damages as in a typical ADA discrimination case, including back wages, statutory damages, and punitive damages. 42 U.S.C § 1981a(a)(2).

112. In this case, Almatis offered Mr. Rainey employment in September 2015. Despite the fact that Mr. Rainey submitted medical clearances authorizing him to work without restrictions, Almatis revoked its offer after it learned that Mr. Rainey suffered from a kidney disorder. Mr. Rainey filed a Charge of Discrimination against Almatis on September 24, 2015. Almatis then re-offered employment to Mr. Rainey, but nearly immediately after he accepted Almatis began disciplining him for previously excused and bona fide medically related absences that did not interfere with Almatis's business or cause it any undue hardship. After Almatis issued Mr. Rainey several pretextual write-ups, Almatis terminated him on February 10, 2016. The time from when Mr. Rainey filed his Charge of Discrimination to when Almatis first began pretextually disciplining him was only two months – and only two weeks after it re-hired him. From the time Almatis hired Mr. Rainey until it terminated him was less than three months.

113. Meanwhile, Mr. Rainey began his employment with Almatis on the same day as Steven Hatfield, and both held jobs classified as "precipitation helper." While supervisor Joe Kernan routinely disciplined Mr. Rainey for his short periods of excused and medically necessary absences, Mr. Kernan did not discipline Mr. Hatfield for routinely missing work for court proceedings other non-work and non-disability related reasons. While Mr. Rainey was terminated for these short periods of medically necessary absences, Mr. Hatfield was not. Upon information and belief, the reason Mr. Rainey was disciplined and terminated but not Mr. Hatfield is because Almatis was actually retaliating against Mr. Rainey because he previously

filed a Charge of Discrimination against Almatis.

114. Upon information and belief, Almatis only agreed to re-hire Mr. Rainey to avoid any liability for his original Charge of Discrimination, and always planned on pretextually terminating him after he started work and began taking, short, periodic leaves of absence to attend medical appointments.

115. At all relevant times as alleged herein, both Mr. Kernan and Mr. Clay were acting as authorized agents of Almatis and within the course and scope of their job responsibilities.

116. Upon information and belief, Almatis's conduct was intentional, purposeful, and malicious. Upon information and belief, at all times Almatis and its decision-makers knew that their conduct was unlawful but persisted anyway.

117. Accordingly, Almatis is liable to Mr. Rainey for all statutory and equitable damages caused by its illegal employment discrimination, including lost back wages, lost future wages, compensatory damages, statutory damages, punitive damages, litigation costs, and reasonable attorney's fees.

**B.     Disability Discrimination Under the Americans with Disabilities Act (as Amended)**

118. Alternatively, pursuant to the Americans with Disabilities Act (as amended), an employer may not discriminate against an employee "on the basis of disability in regard to . . . [the] discharge of employees. . . ." 42 U.S.C. § 12112(a).

119. Relevant here, to make out a prima facie case of disability discrimination, a plaintiff must show "(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). "Disability" means that the plaintiff "is disabled, has a record of having a disability, or is regarded as disabled." *E.E.O.C. v. Chevron Phillips Chem.*

14

*Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).

120. In the first instance, a plaintiff is "disabled" if he suffers from "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). Relevant here, an "impairment" is "[a]ny physiological . . . condition . . . affecting one or more body systems, such as . . . genitourinary . . . circulatory, hemic . . . and endocrine[.]" 29 C.F.R. § 1630.2(h)(1). An impairment is substantially limiting when considering how the impairment "affects the operation of a major bodily function." 29 C.F.R. § 1630.2(j)(4)(ii).

121. Alternatively, a plaintiff is disabled when he is "regarded as disabled." 42 U.S.C § 12102(1)(c). A person is "regarded as disabled" when he is "subjected to an action prohibited under the ADA because of 'an actual or perceived' impairment regardless of whether the impairment is, or is perceived to be, substantially limiting." *Kennedy v. Parkview Baptist Sch., Inc.*, 13-478, 2014 WL 7366256 at *6 (M.D. La. Dec. 24, 2014) (citing 42 U.S.C. § 12102(3)(A); 29 C.F.R. § 1630.2(l)(1)-(3)).

122. An employer also discriminates against a disabled employee when the employer refuses to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 442 (5th Cir. 2017) (citing 42 U.S.C. § 12112(b)(5)(A)). An accommodation is reasonable unless it imposes "undue financial and administrative burdens" on the employer. *See generally Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 288 n.17 (1987). Reasonable accommodation specifically includes "a schedule change to permit [the employee] to attend follow-up or 'monitoring' appointments with a health

15

care provider[,]" 29 C.F.R. §1630.2(k)(3), or simply a "modified work schedule." 29 C.F.R. §1630.2(o)(2)(ii).

123. Ultimately, an employer who discriminates against a disabled employee by terminating his employment is liable for the employee's resulting damages, including lost back wages, compensatory damages, statutory damages, litigation costs, and reasonable attorney's fees. An employer who does so intentionally or maliciously is also liable for punitive damages.

124. In this case, Mr. Rainey suffered from a disability to his kidneys, circulatory, hemic, and immune systems. Mr. Rainey suffered from nephropathy and Stage 3 Chronic Kidney Disease. Mr. Rainey's kidney functioning was far less than a non-disabled person's, and if untreated Mr. Rainey's disorder would eventually cause kidney failure. Nevertheless, when properly controlled, Mr. Rainey was able to perform all his stated job duties with or without accommodation. When an accommodation was needed, it was only short, periodic changes to his schedule to allow him to attend follow-up medical appointments or procedures. At no time did Mr. Rainey's disability pose a direct threat to himself or others in the workplace.

125. Even though Mr. Rainey required short, periodic changes to his schedule to attend follow-up medical appointments, that is only because Almatis scheduled him in such a way that it was likely Mr. Rainey would be scheduled to work on days and times of those appointments. Mr. Rainey made himself available to work any shift on any day, including weekends in order to minimize (and potentially eliminate) any absence from work. In this sense, Mr. Rainey did not even require a reasonable accommodation if Almatis had simply scheduled Mr. Rainey in a way that avoided medical appointments all together.

126. Despite the reasonable nature of the necessary accommodation, Almatis and its agents routinely disciplined Mr. Rainey for documented medical appointments and short instances of

sick leave. Later, Almatis used these absences as the justification to terminate Mr. Rainey's employment.

127. Almatis's refusal to permit Mr. Rainey to attend periodic medical appointments and to excuse bona fide, temporary sick leave constituted a refusal to reasonably accommodate Mr. Rainey's disability.

128. Meanwhile, Mr. Rainey began his employment with Almatis on the same day as Steven Hatfield, who upon information and belief was not disabled, and who was also classified as "precipitation helper." While supervisor Joe Kernan routinely disciplined Mr. Rainey for his short periods of excused and medically necessary absences, Mr. Kernan did not discipline Mr. Hatfield for routinely missing work for court proceedings other non-work and non-disability related reasons. While Mr. Rainey was terminated for these short periods of medically necessary absences, Mr. Hatfield was not. Upon information and belief, the reason Mr. Rainey was disciplined and terminated but not Mr. Hatfield is because Almatis was actually discriminating against Mr. Rainey because of his disability.

129. At all relevant times as alleged herein, both Mr. Kernan and Mr. Clay were acting as authorized agents of Almatis and within the course and scope of their job responsibilities.

130. Accordingly, Almatis is liable to Mr. Rainey for all statutory and equitable damages caused by its illegal employment discrimination, including lost back wages, lost future wages, compensatory damages, statutory damages, punitive damages, litigation costs, and attorney's fees.

C.  **Unlawful Racial Discrimination Under Title VII**

131. Alternatively, pursuant to Title VII of the Civil Rights Act of 1964 (as amended), an employer may not discriminate against any individual with respect to . . . terms, conditions, or

privileges of employment, because of such individual's race . . . ." 42 U.S.C. §2000e-2(a)(1). An employer illegally discharges an employee based on his race when race is at least one of the factors motivating the discharge. *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005). In a Title VII action, an employer is vicariously liable for its manager's discriminatory acts when the manager serves as the employer's agent, or when the employer knew or should have known of the manager's discriminatory conduct and took no remedial action. *See e.g.*, *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1235 (5th Cir. 1989).

132. In this case, Mr. Rainey began his employment with Almatis on the same day as Steven Hatfield, who is white, and who was also classified as "precipitation helper." While supervisor Joe Kernan, also white, routinely disciplined Mr. Rainey for his short periods of excused and medically necessary absences, Mr. Kernan did not discipline Mr. Hatfield for routinely missing work for court proceedings other non-work and non-disability related reasons. While Alvin Clay, also white, terminated Mr. Rainey because of these short periods of medically necessary absences, Mr. Clay did not terminate Mr. Hatfield's employment. Upon information and belief, the reason Mr. Rainey was disciplined and terminated but not Mr. Hatfield is because Almatis, through its supervisor Joe Kernan and decision-maker Alvin Clay, were biased against Mr. Rainey because he is black, and discriminated against him for that reason.

133. At all relevant times as alleged herein, both Mr. Kernan and Mr. Clay were acting as authorized agents of Almatis and within the course and scope of their job responsibilities.

134. Accordingly, Almatis is liable to Mr. Rainey for all statutory and equitable damages caused by its illegal employment discrimination, including lost back wages, lost future wages, compensatory damages, statutory damages, punitive damages, litigation costs, and attorney's

fees.

## JURY DEMAND

Mr. Rainey requests a trial by jury on all issues and causes of action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Broderick K. Rainey prays that this complaint be deemed good and sufficient; that it and summons be served upon defendant Almatis Burnside, LLC; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendant for all damages and equitable relief due to plaintiff, including lost back wages, lost future wages, compensatory damages, statutory damages, punitive damages, litigation costs, reasonable attorney's fees, and legal interest from the date of demand, and for all other general and equitable relief to which plaintiff is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone: (504) 275-5149
Facsimile: (504) 910-1704
Email: vogeltanz@gmail.com

*Counsel for Broderick K. Rainey*

**Clerk of Court:**
**Please hold summons pending attempt to secure waiver of service**